MONROE COUNTY SHERIFF DEPARTMENT, Appellant–Employer,

v.

REVIEW BOARD OF THE INDIANA DEPARTMENT OF EMPLOYMENT & TRAINING SERVICES, Mable Martin–Scott, George H. Baker and Mark T. Robbins, as Members of and constituting the Review Board of the Indiana Department of Employment and Training Services and Toni L. Hinds, Appellee–Claimant.

No. 93A02–9308–EX–459.

Court of Appeals of Indiana, First District.

June 29, 1994.

Rehearing Denied Aug. 31, 1994.

156

James L. Whitlatch, William J. Beggs, Bunger & Robertson, Bloomington, for appellant.

Linda L. Pence, Anthony J. Rose, Law Offices of Linda L. Pence, Indianapolis, William A. Fawcett, Bloomington, Pamela Carter, Atty. Gen., Indianapolis, for appellees.

ROBERTSON, Judge.

The Monroe County Sheriff Department [Sheriff] appeals the decision of the Review Board of the Indiana Department of Employment & Training Services which reversed the decision of the Administrative Law Judge and determined that Toni L. Hinds was not discharged for just cause so as to render her ineligible for unemployment benefits. The Sheriff raises four issues, which we restate and consolidate for review. One issue requires that we reverse. Restated it is:

> whether the Review's Board's decision, based primarily upon its inference that Hinds was not discharged for just cause because her accounting practices had not subjected her to criminal liability, rests upon a rational basis?

### FACTS

The pertinent facts are largely undisputed. Those in the light most favorable to the Review Board reveal that Hinds was employed by the Sheriff as the Jail Commander from 1987 until January 1, 1991. Hinds' responsibility as Jail Commander included overseeing and administering the jail commissary account and the inmate trust funds. After a new sheriff was elected and took office January 1, 1991, Hinds was replaced as Jail Commander and was transferred to the

position of First Shift Commander. The transfer did not affect Hind's pay.

The inmate trust funds are monies that are paid into the jail by inmates, or their families or friends, and which are to be deposited into interest bearing accounts. The jail commissary account is in effect a store within the jail which allows inmates to order and receive items, such as cigarettes, from outside vendors. The Sheriff's Manual sets forth duties and responsibilities of the Jail Commander, including the express order that, "The Jail Commander will maintain accurate financial records of the jail." Further, the Jail Commander is required to maintain accurate records of all expenditures, income, petty cash, and inmate funds. Hinds had a copy of the Sheriff's Manual.

When the new sheriff took office in 1991, he and another member of the Sheriff's department discovered that the records kept by Hinds in her duty as Jail Commander in her office were in a state of disarray, that Hinds' office was in disarray, and that there were boxes and trash bags which were later identified as containing department records. Records were still missing at the time of the administrative hearing in this matter. The Sheriff began to receive overdue and unpaid bills from the suppliers of the Jail Commissary. The Sheriff contacted the State Board of Accounts and requested that an audit of the Department be performed.

In June of 1991, the State Board of Accounts provided a verbal report to the Sheriff indicating that funds were missing or unaccounted for. Then on September 9, 1991, the Board issued its formal written audit report which stated that the cash necessary to balance the Jail Commissary and Inmate Trust Funds for the period January 1, 1989, through December 31, 1990, was $36,079.05. The report identified several practices and omissions alleged to constitute violations of the law governing the administration of public monies by public officials. Hinds' employment was terminated on September 9, 1991, when the written audit was released.

The 1991 audit was not the first audit to have been performed by the State Board of Accounts while Hinds was responsible for the jail commissary and inmate trust funds. In 1988, Auditor Frank Watson had identified problems with the manner in which these funds were being handled and, at that time, instructed Hinds regarding what should be done differently. Watson recommended to Hinds that she employ a basic, simple accounting system, that all disbursements were to be made by check, and that all incoming money should be receipted and entered in the general ledger. Watson provided Hinds with a list of items she should obtain to establish proper bookkeeping procedures. These items were available from any office supply store. On three occasions in the spring of 1989, Watson unsuccessfully attempted to review Hinds' record-keeping procedures.

During the spring of 1990, the State Board of Accounts examiners again discussed accounting procedures with Hinds. Examiner M.F. Renner explained to Hinds how to keep records on at least two occasions after a 1990 audit of the records in question. Although Hinds acknowledged that members of the State Board of Accounts had offered to help her set up an accounting system for the funds for which she was responsible, she never took any type of action to implement any of the recommended procedures.

Following the results of June, 1991, verbal report of the State Board of Accounts, the Indiana State Police White Collar Crime Unit began an investigation of the jail commissary and inmate trust funds. The Monroe County Prosecutor's Office filed criminal charges against Hinds. However, as will be discussed in more detail below, those charges were ultimately dismissed.

After her discharge in September of 1991, Hinds applied for unemployment benefits. The Indiana Department of Employment and Training Services initially determined that Hinds was discharged for just cause and ineligible for unemployment benefits. Hinds requested a hearing before an Administrative Law Judge to appeal the initial determination. A hearing was held before the ALJ. The ALJ affirmed the initial finding concluding that Hinds was discharged for just cause. The operative portion of the ALJ's conclusion reads as follows:

The evidence presented does not make it clear whether the money in question is missing or whether the records are so inadequate that the money was properly spent but cannot be accounted for. The evidence does clearly establish, however that despite the fact [Hinds] was told on several occasions that she needed to set up a ledger and receipt system [she] never did so. Hinds' failure to take those actions makes it impossible for the employer to account for $36,000.00 and the ALJ would conclude that the claimant's failure to take better care of the accounting for the funds was a breach of duty reasonably owed the employer under the circumstances and was just cause for her discharge ...

Hinds then appealed to the Review Board. Hinds' attorney submitted 114 pages of additional documentary evidence to the Review Board together with an application for leave to introduce additional evidence which the Review Board granted. The additional evidence submitted, and relied upon by the Review Board in reversing the decision of the ALJ, consisted primarily of the pleadings and memoranda that had been filed in the criminal proceedings against Hinds. Without conducting a hearing, the Review Board reversed the ALJ and determined that Hinds was entitled to unemployment compensation. The operative portion of the Review Board's conclusion reads as follows:

[Hinds'] additional evidence presented to the Review Board on appeal indicates that the criminal charges brought against [Hinds] were based on [Hinds'] alleged failure to make daily deposits in the inmate trust and commissary accounts. According to the Information, [Hinds] alleged failure to make daily deposits was in violation of the requirements set forth in Indiana Code § 5–13–6–1. In connection with the criminal proceedings, two (2) of the State Board of Accounts auditors who gave testimony for the Employer during the Administrative Law Judge hearing were deposed. During his deposition, and in direct contrast to the testimony presented to the Administrative Law Judge, one of the auditors stated that, in general, a jail commander is not a public officer, and that therefore, [Hinds] was never a public officer under § 5–13–6–1. The other auditor, who had actually drafted the September 9, 1991 State Board of Accounts report, stated in his deposition that the moneys involved in the inmate trust fund and the commissary accounts were not "public funds" and consequently were not subject to the daily deposit requirement. ... the 'State Board of Accounts has determined that no crime has been committed.'

\*   \*   \*   \*   \*   \*

Obviously, the primary reason for [Hinds'] discharge is the situation involving the inmate trust and commissary accounts.... Under the circumstances, however, the Review Board must assign whatever weight is appropriate to the evidence relating to the criminal proceedings. In this regard, the reason for the dismissal of the criminal charges, that the 'State Board of Accounts has determined that no crime has been committed', is important. *The Review Board infers from this statement that no improprieties had been found in [Hinds'] records and no link could be established between [Hinds] and the funds the State Board of Accounts determined were missing from the inmate trust and commissary accounts.* The Review Board does not, however, base its decision to reverse the Administrative Law Judge's denial of benefits on an inference alone.

[The Review Board then cites evidence indicating that the new sheriff harbored ill will toward Hinds while the former sheriff had commended Hinds for her job performance.] The commendation clearly shows that, under the previous administration, [Hinds] had not engaged in any conduct which could be considered a 'wilful or wanton disregard of the employer's interests' under [*Wakshlaq v. Review Board* (1980), Ind.App., 413 N.E.2d 1078]. Up until December 31, 1990, the Employer considered [Hinds] to be a model employee.

[Hinds] performed no work under the new administration. However, after nearly eight (8) months of inactivity, she was discharged for 'unsatisfactory job performance.' It was not until the day he received the State Board of Accounts' report

that the new sheriff felt he had sufficient grounds upon which to formally discharge [Hinds]. *That report, however, had been shown to be unreliable insofar as conclusions were drawn therein that had no legal basis.* While it appears that [Hinds'] accounting methods were less than what an accountant would compile, those methods were not objected to by the sheriff for whom [Hinds] served as jail commander. *Furthermore, the State Board of Accounts has determined that no wrongdoing has occurred.* The Review Board therefore concludes that the Employer has failed to demonstrate just cause for [Hinds'] discharge.

(Emphasis added).

## DECISION

■■■ In Indiana, an unemployed claimant is ineligible for unemployment benefits if he is discharged for "just cause." Ind.Code 22–4–15–1(a). Among the statutory definitions of discharge for just cause is "any breach of duty in connection with work which is reasonably owed an employer by an employee." I.C. 22–4–15–1(d)(8). On judicial review of unemployment compensation proceedings, we must accept the facts as found by the Review Board unless its findings fall within one of the exceptions for which the court may reverse. *Arvin North American v. Review Board* (1992), Ind.App., 598 N.E.2d 532, *trans. denied.* Those exceptions include:

(1) The evidence on which the Review Board based its findings was devoid of probative value;

(2) The quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis;

(3) The result of the hearing before the Review Board was substantially influenced by improper considerations;

(4) There was no substantial evidence supporting the findings of the Review Board;

(5) The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary;

(6) The Review Board ignored competent evidence.

598 N.E.2d at 538. Moreover, it is a violation of due process for the Review Board to determine witness credibility contrary to the determination of the hearing referee without holding another hearing at which it can observe the demeanor of the witnesses firsthand. *Stanley v. Review Board* (1988), Ind. App., 528 N.E.2d 811.

■■■ When reviewing a decision of the Review Board, we must determine whether the decision is reasonable in light of its findings, and we may examine only the evidence and reasonable inferences therefrom which would support the Review Board's decision. *Willett v. Review Board* (1994), Ind.App., 632 N.E.2d 736, *trans. denied.* We may reverse a decision of the Review Board if reasonable persons would be bound to reach a conclusion different than the decision reached by the Review Board based on the evidence before it. *Id.*

■■■ The primary basis of the Review Board's decision, its inference that because the State Board of Accounts had concluded that Hinds' poor accounting practices were not criminal, her poor accounting practices did not constitute a breach of duty in connection with her work reasonably owed to the Sheriff's department, is unreasonable, clearly erroneous, and fatal to the validity of the Review Board's decision. Hinds' exoneration from criminal sanctions resulted from legal conclusions that she was not a public official and the funds in question were not public monies. The dismissal of the criminal charges did not result from, as erroneously inferred by the Review Board, a determination that Hinds' record keeping practices involved no improprieties.

Thus, the decision of the Review Board is not supported by evidence or the reasonable inferences to be drawn from the evidence because it rests primarily on erroneous, unreasonable inferences drawn from the evidence. The quantum of legitimate evidence remaining to support the Review Board's decision is so proportionately meager as to lead us to the conviction that the Review

Board's determination does not rest upon a rational basis.

On the other hand, the evidence in the record overwhelming supports the determination entered by the ALJ that Hinds' substandard accounting practices were detrimental to her employer: over $36,000.00 was unaccounted for in just one year. The evidence supports the ALJ's determination (and is not contradicted by the findings of the Review Board) that Hinds, despite being told on several occasions that she needed to establish responsible accounting practices, never did so. Thus, the Review Board's decision is further defective because it ignores this competent, overwhelming evidence in support of Hinds' just cause discharge.

Reasonable persons would be bound to conclude that Hinds' failure to take better care of the funds under her charge constituted a breach of duty reasonably owed the Sheriff and was just cause for her discharge. Therefore, we reverse and remand with instructions that Hinds' application for unemployment compensation be denied.

Decision reversed.

HOFFMAN and RUCKER, JJ., concur.